IN THE COMMONWEALTH COURT OF PENNSYLVANIA

179 Warren Street, LLC, : 
                 Appellant : 
                 : 
            v. :   No. 417 C.D. 2024
                 :   Submitted: August 8, 2025
Delaware County Tax Claim Bureau : 
and Roland Oris : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED:  November 20, 2025

     179 Warren Street, LLC (Taxpayer) appeals from the March 19, 2024 Order of the Court of Common Pleas of Delaware County (trial court) denying its Petition to Set Aside Upset Tax Sale (Petition).  Taxpayer is the former owner of real property located at 4017 Brunswick Avenue in Drexel Hill, Delaware County (Property), which the Delaware County Tax Claim Bureau (Bureau) sold at an upset tax sale in 2022.  Before this Court, Taxpayer challenges the Bureau's notification efforts in advance of the upset sale, as well as the purchase price of the Property at the upset sale.  As discussed more fully below, we conclude that the Bureau properly notified Taxpayer of the upset sale by mail, the Bureau's additional efforts to locate Taxpayer were reasonable, and the purchase price of the Property was not grossly inadequate under our case law.  Therefore, we affirm the trial court's Order.

## I.  BACKGROUND

     Taxpayer is a New York limited liability company with a mailing address of 140 Remsen Street, Second Floor, Brooklyn, New York, 11201.  (Reproduced

Record (R.R.) at 72a, 75a.) The Bureau listed the Property for an upset tax sale due to delinquent 2020 county and school taxes, which resulted in an upset price of $19,907.[1] The Bureau sold the Property at an upset sale on September 22, 2022, to Roland Oris, who purchased the Property for $76,000.

On July 28, 2023, Taxpayer filed its Petition, asserting that the Bureau failed to provide Taxpayer with proper notice of the upset sale pursuant to Sections 602(e) and 607.1(a) of the Real Estate Tax Sale Law (RETSL), Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.602(e) and 5860.607a(a).[2] (R.R. at 9a.) Section 602(e) of the RETSL governs notice by mail and provides:

> (e) In addition to [publication of the notice in a newspaper of general circulation and posting the notice at the property[3]], similar notice of the sale shall also be given by the bureau as follows:
>
> > (1) At least thirty (30) days before the date of the sale, **by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner** as defined by this act.
> >
> > (2) **If return receipt is not received from each owner** pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to

---

[1] "Generally speaking, when a property owner is delinquent in paying taxes, an upset tax sale is conducted to recover the 'upset price,' which is the total sum of the taxes owed plus any tax liens and municipal claims." *In re Adams Cnty. Tax Claim Bureau*, 200 A.3d 622, 623 n.1 (Pa. Cmwlth. 2018).

[2] Section 607.1 of the RETSL was added by the Act of July 3, 1986, P.L. 351.

[3] As the trial court explained:

> The parties stipulated at the January 30[, 2024] [h]earing that the Property was published in two newspapers and posted by the Sheriff. As agreed by the parties at the . . . [h]earing, the resolution of this Petition turns on whether the Bureau complied with providing notice by mail to [Taxpayer] and/or complied with any additional notification requirements as set forth in Section 607[.1] of the RETSL.

(R.R. at 185a (internal citations omitted).)

2

each owner who failed to acknowledge the first notice **by United States first class mail, proof of mailing, at his last known post office address** by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. **It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.**

(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

72 P.S. § 5860.602(e) (emphasis added). Section 607.1(a) imposes additional requirements on the Bureau with regard to mailed notices. This section provides:

When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and **such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.** The bureau's efforts **shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.** When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

*Id.* § 5860.607a(a) (emphasis added). In addition to challenging notice, Taxpayer also asserted that the Property's purchase price of $76,000 was "grossly inadequate"

3

because it was far below the Property's fair market value, and, therefore, the upset sale should be set aside. (R.R. at 7a, 9a.)

The trial court held an evidentiary hearing on January 30, 2024. The Bureau presented the testimony of its upset sale coordinator, Janine Heinlein. Taxpayer presented the testimony of Rachel Foster, its sole member, and M. Ari Miller, its property manager. The focus of the witnesses' testimony at the hearing was the issue of notice; no evidence was presented regarding the Property's fair market value. Following the hearing, the parties stipulated to the admission of all exhibits and filed post-hearing briefs in support of their respective positions with the trial court.

On March 19, 2024, the trial court entered an Order denying Taxpayer's Petition.[4] Based on the credited evidence presented at the hearing, the trial court made the following factual findings:

• 140 Remsen Street, 2nd Fl[oor], Brooklyn, NY 11201 (the "Remsen Address") was [Taxpayer's] last address on file with the Bureau.

• After providing notice by posting in December 2021, the Bureau mailed a certified restricted delivery tax sale notice to the Remsen Address.

• The Bureau received the returned green card for the notice, with a signature and a date of delivery of July 17, 2022.

• The Bureau received a returned green card for a notice sent to [Taxpayer] at the Remsen [A]ddress with respect to the tax sale of another property that was owned by [Taxpayer] and that had been exposed to a tax sale; that green card was signed on July 13, 2022[,] and was returned to the Bureau.

• On August 29, 2022, the Bureau mailed a final notice via first[-]class mail to the Remsen Address. Nothing was returned to the Bureau.

_____

[4] By letter dated April 16, 2024, the trial court notified this Court that its March 19, 2024 Order "contains the reasons for the decision being appealed and shall constitute the Opinion upon which [it] rel[ies] in support of [its] Order." (R.R. at 192a.)

4

• Ms. Heinlein checked for additional addresses of [Taxpayer] within the Bureau's internal notes, True People, and Spokeo.

(R.R. at 185a (internal citations omitted).)

The trial court determined that the Bureau's mailing of the notice via United States Postal Service certified mail and first-class mail to the Remsen Address, which Ms. Heinlein's testimony confirmed, satisfied the requirements of Section 602(e) of the RETSL. The trial court rejected Taxpayer's assertion that the signature on the certified mail receipt was not the signature of Ms. Foster or any person authorized to accept service on Taxpayer's behalf, noting that "the RETSL does not require the Bureau to prove that the owner of property actually received the notices of sale; just that it sent the required notices to the owner." (*Id.* at 186a.) With regard to the signature itself, the trial court found:

> [Taxpayer] points to Ms. Foster's signature on her Pennsylvania driver's license, issued December 17, 2022. While the [trial c]ourt observes that Ms. Foster's signature on [her driver's license] appears to be different than the signature on [the certified mail receipts for the two properties sold at the September 22, 2022 upset sale], the [trial c]ourt observes further that the signature of the representative of [Taxpayer] on the deed to the Property is more similar to the signature on [the certified mail receipt] than Ms. Foster's driver's license signature. [Taxpayer] has not offered a handwriting expert to establish that the signature on [the certified mail receipt] is not that of anyone authorized to sign for [Taxpayer], and again, **it is not the Bureau's burden to prove the notice was received.** Unlike in cases where the signature on the return receipt is clearly the name of someone other than the owner or an individual authorized to sign for the owner, *see Perma Coal-Sales, Inc. v. Cambria County Tax Claim Bureau*, 638 A.2d 329 (Pa. C[mwlth.] 1994) [and] *Ali v. Montgomery County Tax Claim Bureau*, 557 A.2d 35 (Pa. C[mwlth.] 1989), **here the signature is unclear but at least somewhat similar to the Property deed's signature of [Taxpayer's] representative, and also similar to the signature on the return receipt for another notice mailed to the Remsen Address on or about the same time.**

5

(*Id.* (internal record citations omitted) (emphasis added).)

Next, the trial court determined that the Bureau made reasonable efforts to locate Taxpayer's whereabouts pursuant to Section 607.1(a) of the RETSL. The trial court recognized:

> The law does not require a bureau to conduct extensive internet searches for telephone numbers or addresses, or to check directories other than in the county where the property is located, particularly where a bureau's additional efforts include a check of assessment records and/or other records that confirm that the correct address is the address used by the bureau for the certified mail notice.

(*Id.* at 187a.) Based on the evidence of record, the trial court concluded:

> **[T]he Bureau has met its burden and satisfied the demands of due process by employing "reasonable efforts" to learn the whereabouts of [Taxpayer]. Ms. Heinlein's testimony establishes that the Bureau searched for additional addresses by consulting its internal notes, True People, and Spokeo.** *Accord* 72 P.S. § 5860.607a ("reasonable efforts" include searching the county's current telephone records and any apparent other addresses or telephone numbers in the file of the property). The Bureau's efforts were "reasonable" and, therefore, sufficient under the RETSL.

(*Id.* at 188a (footnote omitted) (emphasis added).) Taxpayer now appeals to this Court.[5]

## II. ANALYSIS

Before this Court, Taxpayer asserts that the upset sale should be set aside because: (1) the Bureau did not properly provide notice to Taxpayer in accordance with Sections 602 and 607.1 of the RETSL; (2) the Bureau made no reasonable effort to notify Taxpayer of the upset sale; and (3) the purchase price of the Property was

---

[5] Our review in tax sale cases "is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law[,] or rendered a decision with a lack of supporting evidence." *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006).

6

grossly inadequate compared to the Property's fair market value. (Taxpayer's Br. at 12.)[6]

## A. *Notice*

Taxpayer's first two issues regarding notice are interrelated, so we will address them together. Taxpayer contends that it did not learn of the upset sale until April 2023, when its tenant at the Property notified Taxpayer that he had been contacted by a new owner. Taxpayer asserts that the signature on the certified mail receipt, which is illegible, does not belong to Ms. Foster or any person authorized to accept service on Taxpayer's behalf. Because the signature is not that of an authorized representative of Taxpayer, Taxpayer contends that the Bureau did not comply with the notice requirements of Section 602(e) of the RETSL. Taxpayer also asserts that when the Bureau received the certified mail receipt bearing the illegible signature, it should have made a reasonable effort to search for a different address where Taxpayer could receive notice pursuant to Section 607.1(a) of the RETSL.

When a property owner challenges a tax sale, the burden of proof is on the tax claim bureau to prove "strict compliance" with the notice requirements of the RETSL. *In re 2005 Sale of Real Est. by Clinton Cnty. Tax Claim Bureau Delinquent Taxes*, 915 A.2d 719, 724 (Pa. Cmwlth. 2007). Section 602(e)(1) of the RETSL requires that notice of an upset sale be made at least 30 days before the sale by "certified mail, restricted delivery, return receipt requested." 72 P.S. § 5860.602(e)(1). Section 602(e)(2) requires that if return receipt is not received, notice must be mailed at least 10 days before the sale "by United States first class

---

[6] The Bureau was precluded from filing a brief with this Court by Order dated November 18, 2024. Only Taxpayer and Oris are participating in this appeal.

mail, proof of mailing, at [the property owner's] last known post office address." *Id.* § 5860.602(e)(2).

Generally, while the Bureau must strictly comply with the RETSL's notice requirements, it must only prove that it **mailed** all required tax sale notices; it is **not** required to prove that the property owner **actually received** them. *FS Partners v. York Cnty. Tax Claim Bureau*, 132 A.3d 577, 581 (Pa. Cmwlth. 2016); *see also In re Upset Tax Sale Held 11/10/97 Tax Parcel No. 48-020-119*, 784 A.2d 834, 837 (Pa. Cmwlth. 2001) ("'[W]here the [tax claim] bureau has complied with all the notice provisions of Section 602 [of the RETSL], **the fact that notice was not actually received will not defeat the sale**.'") (citation omitted) (emphasis added); Section 602(h) of the RETSL, 72 P.S. § 5860.602(h) ("No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as required was not received by the owner, **provided that such notice was given as prescribed by this section**.") (emphasis added). However, "a signature on the return receipt of a name **other than that of the owner or an individual authorized to sign for the owner is insufficient** to satisfy the tax bureau's certified mail notice obligation." *FS Partners*, 132 A.3d at 582 (emphasis added); *see also Perma Cole-Sales*, 638 A.2d at 331 (concluding that a tax sale notice was insufficient where the return receipt was "not signed by a person authorized to accept mail for the addressee") (italics removed).

At the hearing, Ms. Heinlein, the Bureau's representative, testified that the Bureau mailed the notice to Taxpayer via certified mail, restricted delivery to the Remsen Address; the Bureau received the returned "green card" for the notice, with a signature and a delivery date of July 17, 2022; and the Bureau also mailed the notice via first-class mail to the Remsen Address. (*See* R.R. at 60a-62a.) Ms.

8

Heinlein also testified that two of Taxpayer's properties were exposed at the upset tax sale on September 22, 2022.[7] Ms. Heinlein testified the Bureau mailed the notices for both properties to the Remsen Address, and the postal authorities returned both certified mail receipts to the Bureau. (*Id.* at 62a-63a.) The trial court expressly credited Ms. Heinlein's testimony and found that the signature on the receipt for the Property at issue here, which was signed on July 17, 2022, was similar to the signature on the receipt for Taxpayer's other property, which was signed on July 13, 2022. (*Id.* at 121a-22a); *see Severino v. J.P. Holdings, LLC*, 303 A.3d 540, 544 (Pa. Cmwlth. 2023) (stating that in tax sale cases, "[t]he trial court is the finder of fact and 'has exclusive authority to weigh the evidence, make credibility determinations[,] and draw reasonable inferences from the evidence presented'") (citation omitted). Moreover, Ms. Foster, Taxpayer's sole member, admitted that the two mailed notices for this Property were sent to Taxpayer's correct mailing address, which is the Remsen Address. (R.R. at 148a.) Therefore, the Bureau appears to have satisfied the notice requirements of Section 602(e) of the RETSL.

Our inquiry does not end here, however, because Taxpayer asserts that the illegibility of the signature on the certified mail receipt, together with the fact that neither the "addressee" nor "agent" box on the receipt was checked, raised a significant doubt as to Taxpayer's actual receipt of the notice, thereby triggering the additional notification requirements of Section 607.1(a) of the RETSL. While it is undisputed that the Bureau made additional efforts to locate Taxpayer, Taxpayer

---

[7] The second of Taxpayer's properties sold at the September 22, 2022 upset sale was previously the subject of a separate appeal in this Court, docketed at No. 223 C.D. 2024. However, the docket reflects that Taxpayer voluntarily withdrew its appeal in that case on September 27, 2024.

contends that those efforts were insufficient to satisfy the requirements of Section 607.1.[8] We disagree.

Section 607.1(a) provides that if the certified mail receipt is returned under circumstances that raise "significant doubt" as to the property owner's actual receipt of the notice, the Bureau must make additional "reasonable efforts" to notify the record owner. 72 P.S. § 5860.607a(a); *see Williams v. County of Monroe*, 303 A.3d 1098, 1101 (Pa. Cmwlth. 2023) ("As this Court has explained, '[i]n essence, the [RETSL] requires additional notification efforts when circumstances raise significant doubt as to personal receipt by the owner.'") (citation omitted). Such efforts "shall include," but are not limited to,

> a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.

72 P.S. § 5860.607a(a). In *Williams*, we explained that "the mandatory minimum efforts outlined in Section 607.1 are not exhaustive; they merely "set[ ] a floor" for what constitutes a reasonable effort to locate and serve a property owner." 303 A.3d at 1103. Our Court has further cautioned:

> A "reasonable investigation" as required of a tax bureau in determining the whereabouts of a landowner for purposes of notifying the landowner of a pending tax sale, is one that uses **ordinary common**

---

[8] Taxpayer asserts:

Upon the . . . Bureau receiving back the certified mail [receipt] with the illegible signature, the reasonable thing to do would be to search for a different address where [Taxpayer] could receive notice. Aside from a [G]oogle search, a business entity search for a corporate address, is reasonable, and frankly the bare minimum.

(Taxpayer's Br. at 17.)

**sense business practices to ascertain addresses. While this ordinary common sense standard must go beyond the mere ceremonial act of notice by certified mail, it does not require the equivalent of a title search.**

*Pfeifer v. Westmoreland Cnty. Tax Claim Bureau*, 127 A.3d 848, 853 (Pa. Cmwlth. 2015) (emphasis added); *see Fernandez v. Tax Claim Bureau of Northampton Cnty.*, 925 A.2d 207, 215 (Pa. Cmwlth. 2007) (recognizing that a tax claim bureau's search for a property owner's whereabouts under Section 607.1 must comport with "ordinary common sense business practices").

In this case, Ms. Heinlein agreed that the signature on the certified mail receipt was illegible and that the name of the signer could not be discerned. She testified that as a result, pursuant to the Bureau's "office policy," she attempted to locate a phone number and/or alternate address for Taxpayer. Ms. Heinlein testified that she "did [] a True People search," "looked under [the Bureau's] tax notes[,] and [searched] Spokeo," but "unfortunately, [she could not] locate a phone number to make that call." (R.R. at 67a-68a.) Ms. Heinlein also testified that the Remsen Address was "the mailing address that was on record" with the Bureau as well as with the county board of assessment. (*Id.* at 72a.) Based on Ms. Heinlein's credible testimony, the trial court concluded:

> [T]he Bureau complied with the requirement, described in Section 5860.607[.1 of the RETSL], to exercise "reasonable efforts" to discover the whereabouts of persons/entities requiring notice when there is doubt about the receipt of a mailed notice. In such a circumstance, the law imposes on a tax claim bureau a duty to investigate, but that duty is confined to (1) determining the owners of record, and then (2) using ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given. **The law does not require a bureau to conduct extensive internet searches for telephone numbers or addresses, or to check directories other than in the county where the property is located, particularly where a bureau's additional efforts include a check of assessment records and/or**

11

**other records that confirm that the correct address is the address used by the bureau for the certified mail notice.**

(R.R. at 187a (internal citations omitted) (emphasis added).) Regardless of whether the signature was illegible, we agree with the trial court that the Bureau's additional efforts to locate Taxpayer, which included internet searches, a review of the Bureau's records, and confirmation of the address on file with the county assessment office, were reasonable. Therefore, we conclude that the Bureau satisfied the additional notice requirements of Section 607.1(a) of the RETSL.

### B. *Purchase Price*

Finally, Taxpayer asserts that the upset sale should be set aside because the fair market value of the Property is substantially higher than the purchase price. Taxpayer contends, without citation to any record evidence, that the Property is "believed to be" valued at "at least $155,987.84"[9] and that Oris purchased the Property "for $76,000.00, or merely 49% of the Property's value." (Taxpayer's Br. at 18.) Thus, Taxpayer asserts that the purchase price of the Property was "grossly inadequate." (*Id.* at 18.) We disagree.

Our Court has explained that when a property owner alleges gross inadequacy of a tax sale price, the property owner is "required to present competent and credible evidence to establish the actual or estimated market value of the property." *Mathias v. York Cnty. Tax Claim Bureau* (Pa. Cmwlth., No. 714 C.D. 2021, filed July 8, 2022), slip op. at 6;[10] *see Cont'l Bank v. Frank*, 495 A.2d 565, 569 (Pa. Super. 1985) (rejecting a taxpayer's claim that the sheriff's sale price was grossly inadequate

---

[9] In its appellate brief, Taxpayer asserts: "[I]t is believed the county[-]assessed value of the Property was at least $155,987.84, calculated based upon [a]ssessed [v]alue at $[]102,640.00 and applying [the common level ratio] for Delaware County at 65.8%." (Taxpayer's Br. at 13 n.4.)

[10] Under Section 414(a) of this Court's Internal Operating Procedures, we may cite unreported memorandum decisions of this Court, issued after January 15, 2008, for their persuasive value. 210 Pa. Code § 69.414(a).

where he "failed to support [his] allegation of value by providing an accurate appraisal by experts or other competent evidence").[11]  However, as the trial court observed, Taxpayer presented no evidence regarding the Property's fair market value at the hearing.  The trial court determined:

> The [trial c]ourt observes that [Taxpayer's] post-hearing brief includes an argument that the tax sale of the Property should be set aside due to alleged gross inadequacy of price.  This argument was set forth in the Petition.  However, **there was no testimony adduced at the January 30[, 2024 h]earing with respect to such an argument; indeed, none was cited in [Taxpayer's] post-hearing brief.**  As such, the [trial c]ourt rejects this argument as **unsupported by any evidence**.

(R.R. at 121a (emphasis added)); *see Mathias*, slip op. at 6 ("**Absent evidence of the actual or estimated value of the property sold**, a determination of gross inadequacy **cannot be made**.") (emphasis added).  Therefore, the trial court declined to consider Taxpayer's gross inadequacy claim.  We find no error in this decision.

Even if Taxpayer had presented evidence to support its assertion that the Property's sale price was 49% of its fair market value, however, Taxpayer still would not be entitled to equitable relief.  In *In re Upset Sale Tax Claim Bureau of Tioga County*, 305 A.3d 1118 (Pa. Cmwlth. 2023), this Court rejected a taxpayer's claim that the upset sale price was grossly inadequate where it represented **18%** of the property's appraised value.   After reviewing cases involving gross inadequacy claims in sheriff's sale cases, where such claims are typically raised, we held:

> [T]he [p]roperty's approximate upset sale price was $7,465.64 and the final sale price realized at the [u]pset [s]ale was $83,000.  This realized sale price, therefore, represents more than 11 times the approximate upset sale price necessary to allow the [u]pset [s]ale to proceed to

---

[11] In general, "Superior Court decisions 'are not binding on this Court, but they offer persuasive precedent where they address analogous issues.'" *Pa. State Police v. Madden*, 284 A.3d 272, 278 n.13 (Pa. Cmwlth. 2022) (citation omitted).

13

completion. *See* [Section 605 of the RETSL,] 72 P.S. § 5860.605. Additionally, the [p]roperty was assessed at $465,000. **While there is no fixed percentage of amount of appraised value versus sale price that automatically constitutes a "grossly inadequate price," the $83,000 sale price represents approximately 18% of the appraised value of the [p]roperty, or nearly twice the percentage of appraised value versus sale price that Pennsylvania courts have found to represent a "grossly inadequate price" in sheriffs' sales.**

*Id.* at 1127 (some citations omitted) (emphasis added); *see also Bank of Am., N.A. v. Est. of Hood*, 47 A.3d 1208, 1212 (Pa. Super. 2012) (explaining that "Pennsylvania courts have concluded that a sheriff's sale price is grossly inadequate where **[the] sale price was a small percentage – roughly ten percent or less – of the established market value**") (citing cases) (emphasis added).

In contrast, here, Taxpayer contends that the property's sale price of $76,000 was grossly inadequate because it was "**merely 49%** of the Property's value." (Taxpayer's Br. at 18 (emphasis added).) As noted above, Taxpayer presented no evidence establishing the Property's actual or appraised value at the hearing. However, even if we could accept Taxpayer's unsubstantiated contention that the Property's sale price was 49% of its market value, we would conclude that the sale price was not grossly inadequate, because 49% is far greater than the "small percentage" of market value that has been recognized as grossly inadequate under our case law. *See Tioga Cnty.*, 305 A.3d at 1127; *Est. of Hood*, 47 A.3d at 1212.[12]

---

[12] This Court has also recognized that a claim of "grossly inadequate price may also be examined as a basis to set aside tax sales where irregularities in the sale contribute to the grossly inadequate price." *Tioga Cnty.*, 305 A.3d at 1127. Here, however, Taxpayer did not allege any irregularity in the upset sale in its Petition, nor did it present any evidence of an upset sale irregularity at the hearing. *Cf. Gaynor v. Del. Cnty. Tax Claim Bureau* (Pa. Cmwlth., No. 580 C.D. 2023, filed Jan. 22, 2025), slip op. at 5 (even assuming that the property at issue was sold for a grossly inadequate price, "because there [was] no evidence to even suggest that there were irregularities in the [upset] tax sale that contributed to the grossly inadequate sales price, the trial court properly denied the [p]etition" to set aside).

## III. CONCLUSION

Accordingly, we affirm the trial court's Order.

 

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 179 Warren Street, LLC, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 417 C.D. 2024 |
| | : | |
| Delaware County Tax Claim Bureau | : | |
| and Roland Oris | : | |

# **O R D E R**

**NOW**, November 20, 2025, the Order of the Court of Common Pleas of Delaware County, dated March 19, 2024, is hereby **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge